IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE WACKENHUT CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LOCAL 1, SERVICE EMPLOYEES ) <br> INTERNATIONAL UNION, ) <br> ) <br> Defendant. ) | Case No. 05 C 6566 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

An arbitrator adjudicating a grievance filed by Local 1 of the Service Employees International Union, challenging The Wackenhut Corporation's discharge of employee Tammy Nodine, sustained the grievance and ordered Wackenhut to reinstate Nodine and pay her lost wages. Wackenhut filed suit seeking to vacate the arbitrator's decision. Local 1 filed a counterclaim seeking enforcement of the decision. Both Wackenhut and Local 1 have moved for summary judgment. For the reasons stated below, the Court denies Wackenhut's motion and grants Local 1's motion.

**Facts**

Wackenhut provides security services at the Dresden nuclear power plant in Morris, Illinois. Local 1 is a labor union that represents the security officers employed by Wackenhut.

Wackenhut and Local 1 entered into a collective bargaining agreement (CBA) on March 26, 2003. The relevant portions of the CBA include Article 2, which discusses the rights reserved to management, including the "right to discipline, suspend or discharge employees for

just cause," and Article 6, Section 3, which provides that

> [t]he award of such arbitrator shall be in writing and shall be final and binding upon the Employer, the Union, and the Security Officer involved. The arbitrator may consider and decide only the particular grievance presented in the written stipulation of the Employer and the Union and the arbitrator's decision shall be based solely upon the interpretation of the provisions of this Agreement. The arbitrator shall not have the right to amend, take away, modify, add to, change or disregard any of the provisions of this Agreement. In the event that an arbitrator shall determine that a Security Officer has violated an Employer rule, regulation, or policy for which said Security Officer was charged, the arbitrator shall not have the right to reduce, modify, or in any way alter the penalty assessed by the Employer.

Wackenhut employed Nodine as a security officer at the Dresden plant from June 18, 2001 through February 7, 2005. Security officers' duties include raising and lowering retractable "active vehicle barriers" at the plant's entry gates. Security officers were trained twice on operating these devices: in October 2004 after the barriers were installed, and in December 2004 after the barriers were accidentally deployed at four other Wackenhut sites.

Prompted by the incidents at other sites, Wackenhut also issued a memo to all security officers on December 10, 2004, specifying a series of required steps and communications before activating a barrier. Among these was a "STAR Self-Check,"[1] which required security officers to be "100 percent sure that the action to be taken is correct before manipulation of any equipment." *See* Opinion and Award at 5. The memo informed security officers that Wackenhut would treat failure to follow the procedures as a Level 1 incident under the progressive discipline provision of its Policy and Procedure Manual, for which termination was a possible penalty. Wackenhut held meetings to inform security officers about the memo's contents, and the security officers signed statements acknowledging that they had read and understood the memo.

---

[1] STAR is an acronym for Stop, Think, Act, and Review. *See* Award at 5.

On January 20, 2005, Nodine was stationed at Tower Nine of the Dresden plant, and a fellow employee, Mike Borello, was stationed about one hundred yards away at Tower One. As a Waste Management truck was entering the plant, Nodine and Borello apparently followed the required procedures until the final step. Borello radioed Nodine to close the gate behind the truck. Nodine did not perform a STAR self-check, which required her to stop and think before operating the control. Instead, she immediately hit the button that raised the barrier, rather than the button to close the gate. The barrier hit and broke one of the control arms on the truck; some of the barrier's surface was also damaged.

Nodine and Borello reported the incident to management. Wackenhut administered fitness for duty tests, which included drug and alcohol testing. Nodine and Borello both passed these tests. They each provided incident reports and submitted to interviews by their supervisors. Wackenhut sent both employees home on the date of the incident but recalled Borello the next work day. Following several days of internal review, Wackenhut terminated Nodine on February 7, 2005.

Nodine filed a grievance with Local 1 on February 10, 2005. The arbitrator heard the grievance on June 24, 2005. On August 29, 2005, the arbitrator issued an opinion and award sustaining the grievance on the ground that Wackenhut lacked just cause for termination. He directed Wackenhut to reinstate Nodine to her former or equivalent employment and reimburse her lost wages.

On November 18, 2005, Wackenhut filed a petition with this Court seeking to vacate the arbitrator's award. Local 1 filed a counterclaim seeking to enforce the award. Both sides have moved for summary judgment.

**Discussion**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing an arbitrator's decision, a court generally does not review the arbitrator's factual findings absent allegations of dishonesty or fraud, which have not been made in this case. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 39 (1987).

Judicial review of a labor arbitration award is narrow and limited. *Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs,* 348 F.3d 671, 675 (7th Cir. 2003); *Nat'l Wrecking Co. v. Int'l Brotherhood of Teamsters,* 990 F.2d 957, 960 (7th Cir. 1993). A court must enforce the arbitrator's award if it draws its essence from the parties' contract. *Misco,* 484 U.S. at 36 (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 597 (1960)). Any reasonable doubt about whether an award draws its essence from the contract is resolved in favor of enforcing the award. *Ethyl Corp. v. United Steelworkers of Am., ,* 768 F.2d 180, 185, 187 (7th Cir. 1985); *see also Polk Bros., Inc. v. Chi. Truck Drivers, Helpers, and Warehouse Workers Union,* 973 F.2d 593, 597 (7th Cir. 1992).

An award draws its essence from the contract if it is based on the arbitrator's interpretation of the contract. *Ethyl Corp.,* 768 F.2d at 184. It does not matter if the arbitrator's interpretation is correct, so long as the arbitrator has actually interpreted the contract. *Hill v. Norfolk & W. Ry. Co.,* 814 F.2d 1192, 1195 (7th Cir. 1987). A court need only assure itself that "the arbitrator's interpretation can in some rational manner be derived from the collective bargaining agreement." *Butler Mfg. Co. v. United Steelworkers of Am.,* 336 F.3d 629, 633 (7th Cir. 2003); *Dean v. Sullivan,* 118 F.3d 1170, 1171 (7th Cir. 1997) (quoting *Nat'l Wrecking Co.,*

4

990 F.2d at 960). A court can overturn an award only upon a finding that the "arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract." *Ethyl Corp.,* 768 F.2d at 184-85 (emphasis in original).

Wackenhut argues that in deciding the grievance, the arbitrator applied his own standard rather than the one provided by the CBA; that he exceeded his authority, which Wackenhut contends was limited by the terms of Article 6, Section 3 of the CBA; that he misstated the evidence in various respects; and that public policy considerations preclude enforcement of the arbitrator's decision.

First, Wackenhut argues that the arbitrator ignored the "just cause" provision of the CBA and based his decision on considerations outside the CBA. *See Anheuser-Busch v. Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers,* 290 F.3d 1133, 1139 (7th Cir. 2002). From the arbitrator's written ruling, however, it is clear that he expressly evaluated whether there was just cause for discharge within the meaning of Article 2 of the CBA, which provides Wackenhut "the right to discipline, suspend, or discharge employees for just cause." *See* Award at 8.

Wackenhut contends that the only factor that the arbitrator appropriately could take into account was Nodine's infraction and Wackenhut's view of its seriousness, and that his consideration of other factors – such as Nodine's work record, conditions that existed at the time, and so on – amounted to applying his own notion of fairness rather than the contract. The Court disagrees. Contractual provisions requiring just cause for termination are "open to interpretation." *Arch of Ill. v. United Mine Workers of Am.,* 85 F.3d 1289, 1294 (7th Cir. 1996). In this case, the arbitrator read this provision as taking into account more than just the

employee's infraction, an interpretation that was not unreasonable in view of the fact that the CBA did not expressly limit determination of "just cause" to the infraction itself. The arbitrator found that Wackenhut lacked just cause to terminate Nodine because she had a good work record, was "exceptionally busy" at the time of the incident, and had asked Wackenhut for additional security officers at her location. Award at 8. Though Wackenhut may disagree with this finding, there is no question that the arbitrator interpreted and applied the contractual "just cause" standard.

Wackenhut's second argument is that the arbitrator exceeded the scope of his authority under the CBA. Wackenhut's argument is premised upon Article 6, Section 3 of the CBA, which states,

> In the event that an arbitrator shall determine that a Security Officer has violated an Employer rule, regulation, or policy for which said Officer was charged, the arbitrator shall not have the right to reduce, modify, or in any way alter the penalty assessed by the Employer.

Wackenhut reads this provision as effectively making final and unreviewable its decision to terminate Nodine for violating Wackenhut's rules.

The arbitrator specifically considered the effect of Article 6, Section 3 in making his decision; he rejected Wackenhut's proposed construction. He concluded that Wackenhut's interpretation of Article 6, Section 3 would "make the obligation to arbitrate grievances – which I have little doubt is judicially enforceable – a nullity." Award at 8. To avoid an interpretation that would render any provision of the CBA meaningless, the arbitrator attempted to reconcile these provisions, reading Article 6, Section 3 as "intended to guard against any arbitral tendency to split the difference in tough cases. I might like to think that the Greivant's behavior merited a reprimand or a suspension. That option is denied me. I must find that there was just cause to

6

fire her or there wasn't." *Id.* In short, the arbitrator construed Article 6, Section 3, in conjunction with Article 2, as limiting his authority to determination of whether the employer's *chosen sanction* was supported by just cause, eliminating the option of reducing it to a lesser sanction. *Id.* at 7, 8.

"[A]rbitral authority is born in contract, thereby limiting our review of whether the arbitrator exceeded this contractual authority. This examination entails determining whether the award draws its essence from the contract." *N. Ind. Pub. Serv. Co. v. United Steelworkers of Am.,* 243 F.3d 345, 347 (7th Cir. 2001); *see Am. Postal Workers Union v. Runyon,* 185 F.3d 832, 835 (7th Cir. 1999). Though the arbitrator's construction of Article 6, Section 3 is perhaps not the only conceivable reading of the CBA, there is no question that he was, in fact, interpreting the CBA.

As noted earlier, so long as the arbitrator actually interprets the contract, enforcement of his award does not depend on whether a court later thinks the arbitrator's interpretation was correct. *Hill,* 814 F.2d at 1195. Moreover, the arbitrator's reading of the agreement was not irrational. Indeed, had the arbitrator accepted Wackenhut's proposed construction of the CBA, Article 2's provision allowing discharge only "for just cause" arguably would have been rendered effectively meaningless – as that provision does not suggest that "just cause" involves only consideration of whether the employee committed an infraction. Because the arbitrator's interpretation was "in some rational manner derived from the ... agreement," *Butler Mfg. Co.,* 336 F.3d at 633, it is not subject to being overturned by the Court as exceeding his authority.

Wackenhut relies on cases in which courts overturned arbitration awards on the ground

that the arbitrators exceeded their authority. *See* Wackenhut Mem. at 8-9. It contends that an arbitrator exceeds his authority by reducing a sanction when the underlying agreement gives the employer exclusive control over discipline. *See id.* at 9. But the CBA in this case did not vest Wackenhut with such exclusive control. Rather, as interpreted by the arbitrator, it limited imposition of a disciplinary sanction to cases in which "just cause" existed, giving the employer exclusive control only over the particular sanction once just cause is shown. Again, the arbitrator's interpretation of the agreement was rational and as such is not subject to second-guessing by a court.

Wackenhut next cites several alleged factual errors by the arbitrator. These alleged errors concerned who installed the barriers, when training on operating the barriers occurred, and whether Wackenhut terminated employees at other cites following similar incidents. Wackenhut also contends the arbitrator referred to an irrelevant fact, namely the modification of the control panel.

A court will not vacate an arbitration award due to factual errors so long as the award contains an honest decision of the arbitrator after a full and fair hearing. *See, e.g., Nat'l Wrecking Co.,* 990 F.2d at 960; *Ethyl Corp.,* 768 F.2d at 183. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts therefore do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Misco,* 484 U.S. at 37-38. Unless the parties allege dishonesty on the arbitrator's part, a claim of improvident or mistaken fact-finding is not a sufficient basis to overturn the arbitrator's decision. *Id.* at 39.

8

Wackenhut does not contend that it did not get a full and fair hearing or that there was any dishonesty on the part of the arbitrator. The fact that it disagrees with certain of the arbitrator's findings is insufficient grounds to vacate the award.

Finally, Wackenhut contends the arbitrator's award should be vacated because it is contrary to public policy, specifically, safety at nuclear power plants. Though a court cannot enforce a collective bargaining agreement if it is contrary to public policy, the exception is a narrow one. *E. Associated Coal Corp. v. United Mine Workers of Amer.,* 531 U.S. 57, 63 (2000). The question is whether the arbitrator's decision to reinstate Nodine – *not* Nodine's infraction – runs "contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interest." *Id.*

Wackenhut has not pointed, however, to any laws or regulations that would be contravened by Nodine's reinstatement. Rather, it refers only generally to the "volumes of regulations that govern the safety of all nuclear power plants." Wackenhut Mem. at 12. Wackenhut also relies on an Eighth Circuit decision upholding a termination of a power plant worker that, according to Wackenhut, demonstrates there is a "dominant" and "well-defined" public policy regarding safety at nuclear power plants. *Iowa Elec. Light & Power Co. v. Local Union 204, Int'l Brotherhood of Elec. Workers,* 834 F.2d 1424 (8th Cir. 1987). But the court in *Iowa Elec. Light & Power* qualified its decision by saying that "our holding today should not be read as a blanket justification for the discharge of every employee who breaches a public safety regulation at a nuclear power plant." *Id.* at 1429. Moreover, in *Iowa Elec. Light & Power,* the employee "flouted federally mandated safety regulations" by purposely unlocking and opening a door, whose purpose was to make sure that any radiation leaks remain within the plant." *Id.* at

9

1425-26. The same is not true in this case; Nodine violated a rule of her employer, not a federal regulation. The Court has no quarrel with the proposition that safety at nuclear power plants is an important public concern. But Wackenhut has failed to show that the arbitrator's decision contravenes "an explicit, well-defined, and dominant public policy" expressed in statutes or regulations.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion for summary judgment [docket no. 25] and denies plaintiff's motion for summary judgment [docket no. 19]. The Court directs the Clerk to enter judgment in favor of the defendant, enforcing the award of the arbitrator.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 17, 2006